IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARIETTA DANIELS-DAVIS | § | |
| v. | § | CIVIL ACTION NO. 6:12CV863 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER**

On November 8, 2012, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits.

**I. HISTORY**

On March 5, 2007, Marietta Daniels-Davis filed for disability insurance benefits under Title XVI of the Social Security Act (the Act). *See* Transcript ("Tr.") at 169-74. In her application, Plaintiff alleged disability beginning March 20, 2006. *Id*. Her claim was initially denied on April 27, 2007, and upon reconsideration on June 29, 2007. *See* Tr. at 116, 117. An administrative hearing was held on August 5, 2009, in Tyler, Texas, before Administrative Law Judge Christopher L. Williams. *See* Tr. at 121.

Plaintiff appeared with representation and testified about her medical issues and their impact upon her life. *See* Tr. at 84–113. Vocational expert Tammy Donaldson and medical expert Dr. Sterling Moore also appeared and testified. *Id.* The ALJ issued an unfavorable decision on August 31, 2009. *See* Tr. at 121–29.

Plaintiff requested Appeals Council review of the ALJ's decision, and on January 24, 2011, the Appeals Council remanded Plaintiff's case back to the ALJ and ordered him to give further

consideration to the treating opinions in the record and to Plaintiff's maximum residual functional capacity. *See* Tr. at 131–32.

In compliance with the Appeals Council's order, a second administrative hearing was held in front of ALJ Williams on August 31, 2011. *See* Tr. at 12 (Administrative Law Judge ("ALJ") decision). Plaintiff testified again. Medical expert Dr. Charles Murphy and vocational expert Russell Bowden also appeared and testified. *Id*. The ALJ issued a second unfavorable decision on October 5, 2011. *See* Tr. at 12–22. Based on its findings, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, from her application date through the date of his decision. *See* Tr. at 118. On November 8, 2011, Plaintiff requested Appeals Council review of the ALJ's unfavorable decision. *See* Tr. at 7–8. On October 23, 2012, the Appeals Council denied Plaintiff's request for review. *See* Tr. at 1. Therefore, the AC's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Having exhausted her administrative remedies, Plaintiff filed the above-captioned case seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

**II.    STANDARD**

Title XVI of the Act provides for supplemental security income for the disabled. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor

substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435; *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435; *see* also *Harrel*, 862 F.2d at 475. Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I.

Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f).

An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* To obtain Title II

disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

**III.  ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ made the following findings in the October 5, 2011, decision:

The claimant has not engaged in substantial gainful activity since February 26, 2007, the application date (20 C.F.R. § 416.971 *et seq.*).

The claimant has the following severe impairments: obesity, obstructive sleep apnea; liver disease; hepatitis C and cirrhosis; degenerative joint disease in the hands, wrists, and knees; and cervical and lumbar spondylosis (20 C.F.R. § 416.920[c]).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

The residual functional capacity produced by the medically determinable impairments permits sitting 6 hours in an 8 hour workday at 2 hour intervals, standing 2 hours in an 8 hour workday at 30 minute intervals, walking 2 hours in an 8 hour workday at 30 minute intervals, and lifting less than 10 pounds frequently and 10 pounds occasionally as defined by the regulations at 20 CFR § 416.967(b). The claimant cannot squat, kneel, crouch, climb, or crawl and can occasionally stoop and bend; and can do frequent handling and fingering (not constant).

The claimant is capable of performing her past relevant work as a telemarketer (DOT 399.357-014). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 416.965).

The claimant has not been under a disability, as defined in the Social Security Act, from February 26, 2007, the date the application was filed (20 CFR § 416.920[f]).

*See* Tr. at 12-22.

The ALJ determined that Plaintiff was not disabled under section 1614 (a)(3)A) of the Social Security Act. *See* Tr. at 22.

## IV. DISCUSSION AND ANALYSIS

Plaintiff asserts she cannot work because she has been suffering from lupus, hepatitis, carpal tunnel syndrome, and back and knee problems since March 20, 2006. Plaintiff is a high school graduate who has had some vocational training in sales and data entry. *See* Tr. at 31. She is a widow who lives with her adult son and 87-year old mother, and spends her time watching television. *See* Tr at 31-32. She is able to walk for about 30 minutes on "a good day". *See* Tr. at 41. She wears her hair in a ponytail because that is the only way she is able to style it. *See* Tr. At 41. She can go to the grocery store, but she has to use a mechanical car to get around the store. *See* Tr. at 43.

Plaintiff argues, in her sole contention of error, that the ALJ did not properly considered the opinions of Plaintiff's treating physician, Perry Wallach, M.D in arriving at his conclusion that Plaintiff was not disabled under the Act. *See* Plaintiff's Brief ("Pl. Br.") at 1, 9-13.

### A. The Medical Evidence in the Record.

Plaintiff was fifty-two years-old at the time of her application for benefits. *See* Tr. at 169. Plaintiff's medical records indicate that she has been treated for knee and back problems, osteoarthritis, carpal tunnel syndrome, hepatitis C, and gastrointestinal impairments during the time relevant to her claim for benefits. After a fall in March 2006 injured her right knee, Plaintiff was issued a knee immobilizer and instructed to use crutches to ambulate. *See* Tr. at 272–73. Dr. William Schreiber noted that Plaintiff's knee was unstable, and her knee extension and range of motion were reduced. *See* Tr. at 253, 254. He suspected torn MC and AC ligaments. *Id*. An MRI performed in June 2006 confirmed a torn ACL and prominent joint effusion. *See* Tr. at 267. Records from 2006 also show that Plaintiff was treated for a lumbar back strain. *See* Tr. at 282, 290.

In March 2007, Plaintiff underwent a consultative exam in conjunction with her application for benefits. *See* Tr. at 297–99. Plaintiff reported that her back and knee pain affected her ability to stand for long periods of time, and she could only walk for one block or climb three steps before needing to stop due to pain. *See* Tr. at 297. The examiner concluded that Plaintiff suffered from

6

arthritis in both knees, low back pain, carpal tunnel syndrome, and hepatitis C. *See* Tr. at 298. An x-ray of Plaintiff's lumbar spine showed degenerative disc disease and facet arthrosis. *See* Tr. at 299. An x-ray of Plaintiff's right knee showed degenerative changes and joint effusion. *See* Tr. at 300. On April 17, 2007, Plaintiff underwent x-rays on her lumbar spine and right knee. Degenerative disc changes and facet arthrosis were seen in her lumbar spine, and degenerative changes and joint effusion were noted in her knee. *See* Tr. at 466, 467.

Plaintiff was treated by Dr. Perry Wallach for knee, foot, and back pain beginning in July 2007. *See* Tr. at 367. He ordered x-rays of Plaintiff's lumbar spine, which showed degenerative disc disease and facet arthrosis. *Id*. This imaging of Plaintiff's knees showed degenerative changes. *See* Tr. at 369.

An opinion from Dr. Wallach, dated October 30, 2007, noted that Plaintiff needed to elevate her legs and change positions frequently in an eight-hour workday. *See* Tr. at 330. Dr. Wallach also opined that Plaintiff could not lift objects of any weight in a vocational setting. *Id.* Dr. Wallach also stated that Plaintiff was limited in her ability to use her hands and arms for grasping, pushing, pulling, and fine manipulation, and she was unable to perform postural movements in a vocational setting. *See* Tr. at 331. Dr. Wallach expected Plaintiff's limitations to last a lifetime and believed that she would miss more than four days of work a month due to her impairments. *See* Tr. at 332.

X-rays performed on the same day showed osteoarthritis and degenerative changes in Plaintiff's feet and knees. *See* Tr. at 362–65. In addition to her musculoskeletal problems, Plaintiff was also treated for lung and digestive problems as well as hepatitis C in 2007. Chest CTs showed chronic obstructive pulmonary disease (COPD). *See* Tr. at 396, 452. Plaintiff was also diagnosed with chronic reflux with dysphagia, chronic constipation, lupus, hepatitis C and fatigue. *See* Tr. at 325, 327, 338, 477, 494, 498, 504.

At a January 30, 2008, appointment, Dr. Wallach assessed Plaintiff with memory problems and carpal tunnel syndrome. *See* Tr. at 520–21. He ordered x-rays of Plaintiff's hands and cervical spine in May 2008 after her symptoms persisted. The x-rays of her hands showed degenerative changes, and

7

the x-ray of her cervical spine showed degenerative spondylosis and narrowing. *See* Tr. at 636, 664, 666. Dr. Wallach's treatment records throughout 2008 note that Plaintiff experienced from chest, knee, and back pain, and he diagnosed her with arthritis, chronic pain, hepatitis C, and hypertension. *See* Tr. at 639, 766, 775, 780.

Dr. Wallach issued another opinion on September 24, 2008, regarding the severity of and functional limitations caused by Plaintiff's impairments. Dr. Wallach listed Plaintiff's primary diagnoses as arthritis and hepatitis C. *See* Tr. at 711. Dr. Wallach stated that Plaintiff was not a malinger and that her pain caused constant interference with her attention and concentration. *See* Tr. at 712. He opined that Plaintiff could walk half a block, sit forty-five minutes, and stand ten minutes before stopping. *Id.* Plaintiff could rarely lift ten pounds, and needed the freedom to shift positions and elevate her legs. *See* Tr. at 713. Dr. Wallach estimated that Plaintiff would miss three days of work per month due to her symptoms. *See* Tr. at 714.

Plaintiff was also treated for her various gastrointerology impairments with Dr. Elias Fanous beginning in 2008. *See* Tr. at 817–31. Dr. Fanous noted Plaintiff's elevated liver functions and dysphagia. *See* Tr. at 827–31. A liver biopsy performed in November 2008 showed chronic hepatitis with cirrhosis. *See* Tr. at 842. Treatment notes from 2009 show that Plaintiff was receiving treatment from Dr. Fanous for her hepatitis, which caused fatigue and lethargy. *See* Tr. at 817–19. Another liver biopsy performed in 2009 showed cirrhosis and liver disease. *See* Tr. at 825. The notes from 2010 and 2011 show continued diagnosis of and treatment for hepatitis, cirrhosis, and epigastric pain. *See* Tr. at 810–16.

Dr. Wallach's treatment notes from 2009 show that Plaintiff continued to suffer from arthralgias and associated pain in her knees, feet, wrists, hands, and shoulder. *See* Tr. at 1052–1112. Dr. Wallach also continued to diagnose carpal tunnel syndrome, memory loss, and hepatitis. *See* Tr. at 1055, 1072. In addition, Plaintiff underwent diagnostic polysomnograms due to severe dyspnea. *See* Tr. at 1030, 1038, 1043, 1214. The studies showed severe sleep disordered breathing and sleep fragmentation. *Id.*

On August 14, 2009, Dr. Wallach issued yet another opinion regarding Plaintiff's symptoms and limitations. *See* Tr. at 807–08. The doctor stated that the maximum weight Plaintiff could lift was five pounds, and the most she could stand or sit without interruption was one hour. *See* Tr. at 807. The doctor also believed that Plaintiff's ability to reach, handle, finger, push, and pull were affected by her arthritis. *See* Tr. at 808.

Plaintiff's knee pain persisted into 2010. Dr. Wallach noted knee crepitus and limping at an appointment in January 2010. *See* Tr. at 1026. By June 2010, Plaintiff reported that he knee pain was constant and continued to worsen. *See* Tr. at 1011. X-rays performed several months later showed severe degenerative arthrosis in both knees. *See* Tr. at 984. X-rays of Plaintiff's feet and lumbar spine also showed degenerative changes. *See* Tr. at 985, 1002. Notes from 2011 show that Dr. Wallach continued to diagnose degenerative joint disease in Plaintiff's knees. *See* Tr. at 955–58, 965–66.

**B.     The ALJ Properly Considered Dr. Wallach's Opinions.**

The ALJ determined, based upon the evidence in the record, that Plaintiff was able to perform her past work, and was not disabled. Considering Plaintiff's residual functional capacity, the ALJ found that Plaintiff could perform her past relevant work based on vocational expert testimony. *See* Tr. at 22 [Findings 5]). Thus, the ALJ concluded that Plaintiff was not disabled and not entitled to DIB. *See* Tr. at 22 [Finding 6]). Plaintiff contends that the ALJ's decision constitutes reversible error, because the reasons given by the ALJ for rejecting the opinions of Dr Wallach were not supported by substantial evidence, and his reliance on the non-examining medical expert was error. *See* Pl.'s Br. At 1, 9-13.

The RFC assessment is an administrative finding of fact, and the ALJ is responsible for making this assessment. *See* 20 C.F.R. § 416.946(c); Social Security Ruling (SSR) 96-8p, 1996 WL 374184; SSR 96-5p, 1996 WL 374183, at *5 (a medical source's statement about what an individual can still do must not be equated with the administrative finding known as the residual functional capacity assessment). The ALJ specifically stated that when he assessed Plaintiff's residual functional capacity, he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs

9

96-2p, 96-5p, 96-6p and 06-3p," which explain how the agency evaluates opinion evidence from treating, examining, and nonexamining sources. *See* Tr. at18; *see also* 20 C.F.R. § 416.927; SSRs 96-2p, 1996 WL 374188; 96-5p; 96-6p, 1996 WL 374180; and 06-3p, 2006 WL 2329939.

The ALJ's statement illustrates that, contrary to Plaintiff's assertion, he properly considered the opinion evidence when he determined that Plaintiff had the residual functional capacity for less than a full range of sedentary work, including sitting six hours in an eight-hour workday at two-hour intervals; standing two hours in an eight-hour workday at thirty-minute intervals; walking two hours in an eight-hour workday at thirty-minute intervals; and lifting up to ten pounds occasionally, but less than ten pounds frequently. *See* Tr. at 18 [Finding 4]). *See* Pl.'s Br. at 1, 9-13. The ALJ limited Plaintiff to occasional stooping and bending, but no squatting, kneeling, crouching, climbing, or crawling. *See* Tr. at 18.

In addition, the ALJ found that Plaintiff could perform frequent, but not constant, handling and fingering. The ALJ's residual functional capacity determination shows that the he properly considered and relied upon the opinions of Dr. Wallach, Plaintiff's treating physician. *See* Tr. at 18, 329-332, 484-488, 710-714, 806-808. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (an ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly). Dr. Wallach's opinions generally support the ALJ's determination that Plaintiff was limited to less than a full range of sedentary work. *See* Tr. at 16-18, 329-332, 484-488, 710-714, 806-808. For example, the ALJ noted that in August 2009, Dr. Wallach opined that Plaintiff could lift five pounds. *See* Tr. at 16, 807. The ALJ limited Plaintiff to frequently lifting less than ten pounds. *See* Tr. at 18. Consistent with Dr. Wallach's opinion, the ALJ found that Plaintiff could not squat, kneel, crouch, climb, or crawl. *See* Tr. at 18, 331, 487, 714, 808.

By including handling and fingering limitations in the RFC assessment, the ALJ sufficiently incorporated Dr. Wallach's opinion that Plaintiff's arthritis limited her ability to use her hands.[1] *See* Tr. 331, 487, 714, 808.

The ALJ noted that in August 2009, Dr. Wallach opined that Plaintiff could stand/walk two hours in an eight-hour day. *See* Tr. at 16, 807. In addition, Dr. Wallach consistently indicated in October 2007, September 2008, and August 2009 that Plaintiff needed to change positions throughout the workday. *See* Tr. at 330, 486, 712-713, 807. Therefore, the ALJ properly included the following limitations in his residual functional capacity assessment: sit six hours in an eight hour workday at two-hour intervals; stand two hours in an eight-hour workday at thirty-minute intervals; and walk two hours in an eight-hour workday at thirty-minute intervals. *See* Tr. at 18. By employing many of the limitations set forth by Dr. Wallach, it is obvious that the ALJ did not entirely reject Dr. Wallach's opinions. *See* Pl.'s Br. at 1, 9-13.

A treating physician's opinion may be given little or no weight when good cause is shown. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan*, 38 F.3d at 237. Contrary to Plaintiff's assertion, the ALJ provided good reasons for not giving controlling weight to Dr. Wallach's October 2007, September 2008, and August 2009 opinions about Plaintiff's functional capacity. *See* Tr. at 16-18, 329-332, 484-488, 710-714, 806-808). *See* Pl.'s Br. at 1, 9-13.

Good cause for declining to follow a treating physician's opinion includes disregarding statements that are brief and conclusory. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Dr. Wallach provided his opinions primarily by checkmarking his answers on the RFC assessment forms. *See* Tr. at 329-332, 484-488, 710-714, 806-808. Other than identifying Plaintiff's diagnoses and subjective complaints, Dr. Wallach failed to include any support on the assessment forms for his

---

[1]Plaintiff incorrectly states that the ALJ found she could "lift and carry ten pounds frequently." *See* Pl.'s Br. at 11. Instead, the ALJ limited Plaintiff to lifting "less than" ten pounds frequently. *See* Tr. at 18.

11

opinions. *See* Tr. at 16, 329-332, 484-488, 710-714, 806-808. *See* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion"). Thus, Dr. Wallach's October 2007, September 2008, and August 2009 opinions are examples of "brief and conclusory" statements that the Fifth Circuit has indicated that an ALJ has good cause to not accord controlling weight. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is . . . otherwise unsupported by the evidence." *Newton*, 209 F.3d at 455-456; 20 C.F.R. § 416.927(c)(3) (supportability is a factor to consider when weighing a treating source's opinion). The record contains a limited number of actual examination/treatment notes from Dr. Wallach around the time he provided his first assessment of Plaintiff's functional capacity in October 2007. *See* Tr. at 329-332, 359-360, 373-376, 484-488.

According to the record, Plaintiff saw Dr. Wallach only a couple of times, in July and September 2007, before Dr. Wallach provided his October 2007 opinion about Plaintiff's RFC. *See* Tr. at 372-376, 533-537, 711. Thus, Dr. Wallach's lack of a lengthy treatment history with Plaintiff prior to October 2007 decreases the value of the opinion that Dr. Wallach provided that month.

In addition, Dr. Wallach's opinions were inconsistent with the total body of evidence in the record. *See* 20 C.F.R. § 416.927(c)(4) (consistency is a factor for the ALJ to consider when he weighs a treating source's opinion). For example, the ALJ pointed out the inconsistencies between Dr. Wallach's October 2007 and August 2009 opinions about Plaintiff's RFC. *See* Tr. at 16-18, 48, 329-332, 484-488, 710-714, 806-808. In October 2007, Dr. Wallach limited Plaintiff to half an hour of sitting, standing, or walking. In August 2009, Dr. Wallach found that Plaintiff could sit, stand, or walk up to two hours. *See* Tr. at 16, 330, 486, 807. Thus, the ALJ had good cause to accord limited evidentiary weight to Dr. Wallach's inconsistent opinions. *See* Tr. at 16-18.

When William E. Shreiber, M.D., evaluated Plaintiff's torn anterior cruciate ligament (ACL) in her right knee in March 2006, he opined that it was unlikely that Plaintiff would require ACL reconstruction. *See* Tr. at 16, 125, 254, 320, 471. Similarly, in August 2006, David J. Carney, M.D.,

an orthopaedic surgeon, determined that Plaintiff was not a surgical candidate despite an MRI confirming a torn ACL. *See* Tr. at 16, 126, 205, 255, 267-268; *see also Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (a diagnosis alone is not enough to establish a disabling impairment). Instead, Dr. Carney opined that Plaintiff needed only strengthening exercises. *See* Tr. at 255, 315.

In addition, Dr. Carney reported that Plaintiff could work as a telemarketer. *See* Tr. at 259-260. Thus, the ALJ properly determined not to give controlling weight to Dr. Wallach's opinions about Plaintiff's significantly limited functional capacity because Dr. Wallach's opinions were inconsistent with the opinions of Drs. Carney and Shreiber. *See* Tr. at 16, 125-126, 205, 254-255, 259-260, 320, 329-332, 471, 484-488, 710-714, 806-808.

On April 17, 2007, Frank P. Reuter, M.D., performed a consultative examination on Plaintiff, and Dr. Reuter's resulting report is inconsistent with Dr. Wallach's opinions about Plaintiff's significantly limited functional capacity, particularly related to her ability to use her hands. *See* Tr. at 18, 297-301, 329-332, 484-488, 710-714, 806-808. Although Plaintiff alleged numbness in both hands due to carpal tunnel syndrome, Dr. Reuter's examination showed that Plaintiff had good grip strength. *See* Tr. 18, 297-298. Dr. Reuter noted that Plaintiff could pick up a paper clip with either hand. *See* Tr. at 18, 298. Dr. Reuter related that Plaintiff's fine motor movements were good, and he observed no motor weakness or muscular wasting. *See* Tr. 18, 45, 298. Thus, the ALJ properly determined that Plaintiff could perform frequent, but not constant, handling and fingering. *See* Tr. 18, 297-298.

Dr. Reuter also observed that Plaintiff had good strength and reflexes in her lower extremities *See* Tr. 298. For example, the straight-leg-raising test was normal. Despite diagnosing arthritis in Plaintiff's knees, Dr. Reuter reported that his examination showed good range of motion in both knees. *See* Tr. at 298. In addition, Dr. Reuter observed that Plaintiff walked without difficulty, she could squat, and she could stand on either foot. *See* Tr. at 298. Considering the inexplicable inconsistencies between Dr. Wallach's opinions and Dr. Reuter's examination findings, the ALJ properly determined not to give

controlling weight to Dr. Wallach's opinions. *See* Tr. at 12, 16, 18, 297-301, 329-332, 484-488, 710-714, 806-808.

The ALJ considered that Elias Fanous, Jr., M.D., began treating Plaintiff for autoimmune hepatitis and hepatitis C with cirrhosis in 2009. This treatment was generally successful in controlling Plaintiff's allegedly disabling symptoms. *See* Tr. at 16-17, 20, 45, 809-825, 1128-1141. For example, on March 31, 2009, Dr. Fanous noted that Plaintiff's autoimmune hepatitis was "controlled on prednisone and mercaptopurine." *See* Tr. at 822, 1139; *see also Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (a condition that medication or therapy can control or remedy cannot serve as the basis for a finding of disability). In May 2009, Dr. Fanous related that Plaintiff reported "no reflux and no belly pain." *See* Tr. at 821, 1138. The ALJ considered that in July 2009, Dr. Fanous stated that Plaintiff had "done very well except some mild nausea, fatigue, and lethargy". *See* Tr. at 16, 819, 1137. She had no significant gastrointestinal complaints.

The ALJ pointed out that Dr. Fanous reported that Plaintiff continued to do well through February 2010, with only some fatigue and lethargy. *See* Tr. at 16, 816-818, 1134-1136. On September 7, 2010, Dr. Fanous noted that Plaintiff had done fairly well with no significant change. *See* Tr. at 813, 1131. Dr. Fanous pointed out that Plaintiff was not taking prednisone, despite his repeated recommendations. Dr. Fanous reported that Plaintiff was still noncompliant in March 2011. *See* Tr. at 810, 1129. Dr. Fanous did not indicate that Plaintiff's hepatitis was disabling, or that Plaintiff was more functionally limited than the ALJ found. *See* Tr. at 18, 809-825, 1128-1141. Therefore, because Dr. Fanous' evidence is inconsistent with Dr. Wallach's opinions, the ALJ properly determined not to give controlling weight to Dr. Wallach's opinions about Plaintiff's significantly limited functional capacity. *See* Tr. at 16-17, 20, 329-332, 484-488, 710-714, 806-825, 1128-1141.

This is not a case, like *Newton,* where the ALJ summarily rejected the opinion of Plaintiff's treating physician based only on the opinion of a non-specialty medical expert who had not examined the claimant. *See Newton*, 209 F.3d at 456. Instead, the ALJ properly considered the competing medical

evidence from the treating and examining physicians outlined above. *See Newton*, 209 F.3d at 458. The ALJ's residual functional capacity finding illustrates the ALJ's proper consideration of the entire record, including Dr. Wallach's opinions. Therefore, the facts here are distinguishable from the facts in *Newton,* where the ALJ relied solely on the opinion of a non-specialty medical expert who had never examined the claimant. The testifying medical expert considered the record, heard Plaintiff's testimony at the August 2011 hearing, and he has full knowledge of the Commissioner's programs. *See* Tr. at 16-18, 44-51). *See* 20 C.F.R. §§ 416.927(c)(6), 416.927(e)(2)(iii) (when an ALJ considers a nonexamining medical expert's opinion, the ALJ considers the medical expert's understanding of the agency's disability programs and their evidentiary requirements, and the extent to which the medical expert is familiar with the information in a claimant's case record).

In addition, the ALJ noted that the record, particularly Dr. Reuter's consultative examination, supported the testifying expert's opinion. *See* Tr. at 18, 297-301; *see also* 20 C.F.R. §§ 416.927(c)(3), 416.927(e)(2)(iii) (supportability is a factor to consider when weighing a testifying medical expert's opinion). The Fifth Circuit has long maintained that the ALJ has the primary responsibility for weighing medical opinions. *See Greenspan*, 38 F.3d at 237; *see also Scott,* 770 F.2d at 485. Therefore, contrary to Plaintiff's assertion, the ALJ properly gave significant weight to the medical expert's testimony that his opinion was consistent with Dr. Wallach's most recent August 2009 opinion about Plaintiff's residual functional capacity. *See* Tr. at 18, 46-48, 806-808; *see* also Pl.'s Br. at 9-13.

According to Plaintiff, Dr. Wallach's September 2008 opinion that Plaintiff would miss three days of work per month is equivalent to opining that she was unable to work, because the vocational expert testified that employers would not tolerate that amount of absences. *See* Tr. at 54-55, 714; *see* Pl.'s Br. 12. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. § 404.1527(e)(1). "These determinations are legal conclusions that the regulations describe as 'reserved to the Commissioner.'" *Id.* Dr. Wallach's opinion that Plaintiff

would miss three days of work per month does not deserve special weight or significance. *See* Pl.'s Br. at 12.

The Fifth Circuit has noted that it is the task of the ALJ to resolve conflicts in the evidence. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). To the extent that Plaintiff is asking the Court to reweigh the evidence in her favor, the Court will refrain from doing so. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)(In applying the substantial evidence standard, the Court must carefully examine the entire record but must refrain from reweighing the evidence or substituting its judgment for that of the Commissioner). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett*, 67 F.3d at 564. Substantial evidence and relevant legal precedent support the ALJ's decision. Therefore, the opinion of the ALJ should be affirmed.

## V. CONCLUSION

Substantial evidence supports the ALJ's ultimate conclusion that Plaintiff was not disabled. Therefore, the Commissioner's finding of "not disabled" should be affirmed. *See Morris*, 864 F.2d at 335; *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) ("[The Court] will not reverse the decision of an ALJ where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").

It is accordingly

**ORDERED** that the decision of the Commissioner is hereby **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

So ORDERED and SIGNED this 12th day of August, 2014.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE